FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2017 JUN 27  PM 2: 45

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

WYNDSOR LIGHTING, LLC,
a Florida limited liability company, and
MARANATHA LABS, LLC, a
Florida limited liability company,

       Plaintiffs,

vs.

CASE NO.: 0:17-CV-1197-ORL-B-KRS

EUGENE L. CAIAZZO, CLIFF MARTIN,
PETER BOLAN, ANDREW YEN, STEPHAN
YEN, FEDERALED, LLC, a dissolved Florida
limited liability company also known as
FEDERALLED, LLC, ELC SALES, LLC, a
dissolved Florida limited liability company, and
FAIRWAY ELECTRONIC CO., LTD, a company
organized in Taiwan,

       Defendants.

_____/

## COMPLAINT

Plaintiffs, WYNDSOR LIGHTING, LLC, and MARANATHA LABS, INC., by and

through their undersigned counsel, sue Defendants EUGENE L. CAIAZZO, CLIFF MARTIN,

PETER BOLAN, ANDREW YEN, STEPHAN YEN, FEDERALED, LLC also known as

FEDERALLED, LLC, ELC SALES, LLC, and FAIRWAY ELECTRONIC CO., LTD. and

allege:

## SUBJECT MATTER JURISDICTION AND VENUE

1.    This is an action for damages that exceed $75,000 and is within the diversity

jurisdiction of this Court pursuant to 28 U.S.C.A. §1332. The Plaintiff is domiciled in the State

1

of Florida and one or more of the Defendants are domiciled in other States. Additionally one or more of the Defendants are domiciled in a foreign country.

2.    Alternatively, at least one cause of action alleged below is based on a federal statute; specifically, 18 U.S.C.A. §1836(b), which creates a federal cause of action under what is commonly known as the Federal Defend Trade Secrets Act. Therefore, this action is within the federal question jurisdiction of this Court pursuant to 28 U.S.C.A. §§ 1331 and 1337. Additionally, this Court has original jurisdiction of the foregoing federal cause of action pursuant to 18 U.S.C.A. §1836(c).

3.    The Court has supplemental jurisdiction of the state law causes of action raised in this action under 28 U.S.C.A. 1367, because all of the state claims arise from the same case or controversy upon which the cause of action based on the above-referenced federal statute arise.

4.    Venue lies in the Federal Court for the Middle District of the State of Florida pursuant to 28 U.S.C.A. §1391(b)(2) because a substantial part of the relevant events occurred in Polk County, Florida, at Plaintiff's principal offices and lab. In the event neither subsection (1) nor (2) of Section 1391(b) apply to this action, venue lies in the Federal Court for the Middle District of the State of Florida pursuant to §1391(b)(3), because AVNET, LLC, is subject to personal jurisdiction in the Middle District of Florida due to its substantial business activities in Orange County, Florida. In addition to all of the foregoing, venue lies in the Federal Court for the Middle District of the State of Florida because one of the contracts upon which a cause of action is alleged below contains a forum selection clause that requires any litigation arising out of the contract to occur in either the federal or state courts for Polk County, Florida.

## GENERAL ALLEGATIONS

5.      Plaintiff WYNDSOR LIGHTING ("WYNDSOR" or "Plaintiff"), is a Florida limited liability company organized in and existing pursuant to the laws of the State of Florida. At all times material, WYNDSOR has been and continues to be in the business of manufacturing and distributing for-profit LED lighting fixtures, components and kits throughout the United States, and the world.  Plaintiff MARANATHA LABS, LLC, ("MARANATHA") a Florida limited liability company currently owned by the same individuals who own the Plaintiff WYNDSOR, created and developed some of the LED lighting fixtures, components and kits manufactured and distributed by Plaintiff. MARANATHA is a wholly-owned subsidiary of the Plaintiff. Hereinafter "Plaintiff" shall refer to both Plaintiffs, collectively.

6.      Defendant EUGENE L. CAIAZZO ("CAIAZZO") is a resident of the State of Florida who resides in Martin County, Florida, based on knowledge and belief. At certain material times, CAIAZZO was employed by WYNDSOR as a sales executive and for a time during that employment was a minority owner of the Plaintiff.

7.      Non-party AVNET, INC. ("AVNET") is a New York corporation incorporated in and existing pursuant to the laws of the State of New York. AVNET's corporate headquarters is located in Phoenix, Arizona. At all times material, AVNET's business has included and continues to include development, manufacture and distribution for-profit of electronic components for LED lighting fixtures kits throughout the United States, including the State of Florida, and the world. Upon information and belief, AVNET also is endeavoring to develop for manufacturing and distribution LED light kits from which buyers can assemble LED light fixtures. AVNET has several offices in the State of Florida out of which it conducts day-to-day

3

business, including about not limited to an office located at 12001 Research Parkway, Suite 301, Orlando, Florida. AVNET and Plaintiff are competitors.

8.     Defendant CLIFF MARTIN ("MARTIN") is a resident of the State of New Jersey and at material times was and remains employed by or otherwise associated with Defendant FEDERALED, LLC. At material times, Defendant MARTIN met, communicated with and otherwise worked in Florida with Defendant CAIAZZO in committing some or all of the actionable conduct alleged in this action. Defendants CAIAZZO and MARTIN had a personal and business relationship prior to the commencement of Defendant CAIAZZO's employment with the Plaintiff.

9.     Defendant FEDERALED, LLC, ("FEDERALED") is a dissolved Florida limited liability company that was organized in and existed pursuant to the laws of the State of Florida. At all material times, Defendant FEDERALED was also known as FederalLED, LLC. Defendant FEDERALED was organized by Defendant CAIAZZO in May, 2010, and has been used by Defendants CAIAZZO and MARTIN when committing some or all of the actionable conduct alleged in this action.   Defendant FEDERALED is a competitor of the Plaintiff. Upon information and belief, Defendant CAIAZZO holds an ownership interest in FEDERALED.

10.     Defendant ELC SALES, LLC, ("ELC") is an administratively dissolved Florida limited liability company that was organized in and pursuant to the laws of the State of Florida effective October 22, 2015.  Defendant ELC was organized by Defendant CAIAZZO who was the sole member of ELC. The dissolution of Defendant ELC occurred on October 15, 2016. Defendant ELC was organized by Defendant CAIAZZO and has been used by Defendants CAIAZZO alone or in conjunction with Defendant MARTIN when committing some or all of the actionable conduct alleged in this action.

4

11.    Defendant PETER BOLAN ("BOLAN") is a resident of the State of North Carolina, based on knowledge and belief. At certain material times, Defendant BOLAN was employed with Arrow Electronics, a business competitor of the Plaintiff. Defendant CAIAZZO also was employed at Arrow Electronics and at the time knew Defendant BOLAN and worked there with Defendant BOLAN, all prior to the commencement of Defendant CAIAZZO's employment with the Plaintiff. Currently, Defendant BOLAN is employed with AVNET, a business competitor of the Plaintiff that also is capable of providing a distribution channel for the Plaintiff. At material times, Defendant BOLAN met, communicated with and otherwise worked in Florida with Defendant CAIAZZO and in some instances also with Defendants MARTIN, ANDREW YEN and STEPHAN YEN in committing some or all of the actionable conduct alleged in this action. Based on information and belief, Defendants CAIAZZO and BOLEN in the latter's employment with AVNET continue to commit some of the actionable conduct alleged in this action.

12.    Defendants ANDREW YEN ("AYEN") and STEPHAN YEN ("SYEN") are residents of the Country of Taiwan and based on information and belief are owners and employees of Defendant FAIRWAY ELECTRONIC CO., LTD., ("FAIRWAY"), an entity that both provides materials and supplies for and is a business competitor of the Plaintiff as a developer, manufacturer and distributer of LED lighting fixtures, components and kits throughout Asia and the United States, including but not limited to the State of Florida. Defendant FAIRWAY is a foreign company located in New Taipai City, Taiwan. Defendants AYEN and SYEN met, communicated with and otherwise worked with Defendant CAIAZZO and in some instances also with Defendant BOLAN and/or Defendant MARTIN in committing

5

some of the actionable conduct alleged in this action.  At all material times, Defendants AYEN
and SYEN were acting on behalf of Defendant FAIRWAY.

13.    Commencing in December, 2014, Defendant CAIAZZO was employed by the
Plaintiff as a sales executive pursuant to an Employment Agreement. Thereafter on the effective
date of September 28, 2015, the parties to the Employment agreement executed a Revised
Employment Agreement to replace the initial Employment Agreement. The Revised
Employment Agreement ("Employment Agreement") is attached hereto as Exhibit A.  Among
other terms, the Employment Agreement required Defendant CAIAZZO to:

    a)    devote his full business time and energy necessary to fulfill the
requirements of his position;

    b)    conduct himself in a manner which was ethical and loyal to the
Plaintiff;

    c)    not make use of confidential or proprietary information of the
Plaintiff except in the course of performing his duties on behalf of the Plaintiff;

    d)    not compete against the Plaintiff during his employment with the
Plaintiff with respect to the types of services and products provided by the
Plaintiff;

14.    Under the Employment Agreement, Defendant CAIAZZO was to receive a non-
voting, minority equity interest in the Plaintiff and upon receiving the equity interest was
required to execute and became bound by the terms and conditions of the then current operating
agreement of the Plaintiff. Defendant CAIAZZO executed with the other members of the
Plaintiff the Plaintiff's Second Amended and Restated Operating Agreement ("Operating
Agreement)" effective October 1, 2015, which reflected membership in the name of Defendant

ELC. Defendant ELC did not exist on the effective date of the Operating Agreement. Relevant parts of the Operating Agreement are attached hereto as Exhibit B. Under the terms and conditions of the Operating Agreement, Defendant CAIAZZO and Defendant ELC agreed among other things not to:

      a)      appropriate, exploit or otherwise use for its own benefit or the benefit of any other, any business opportunity of the Plaintiff;

      b)      communicate any information not in the public domain that, if known by customers, competitors, suppliers or other third parties, would or might reasonably be expected to harm the Plaintiff or could be used to the Plaintiff's disadvantage;

      c)      communicate any information that is not in the public domain and that would or might reasonably be expected to provide an advantage to the Plaintiff's competitors;

      d)      directly or indirectly compete with the Plaintiff or own, manage, operate, join in, control or participate in the ownership, management, operation or control of, or be connected with in any manner, any entity engaged in business similar to that of the Plaintiff.

## LED String-light Project for Turner Construction

15.      While employed with the Plaintiff and unbeknown to the Plaintiff, Defendant CAIAZZO and Defendant MARTIN either owned together or were associated together in FEDERALED, also known as FederalLED. While Defendant CAIAZZO was employed with the Plaintiff, Defendants CAIAZZO and MARTIN on behalf of Defendant FEDERALED and Defendants AYEN and SWEN on behalf of Defendant FAIRWAY conspired to steal and did

steal business opportunities from the Plaintiff. To accomplish their scheme of stealing business opportunities from the Plaintiff, Defendants CAIAZZO and MARTIN acting on behalf of themselves and Defendant FEDERALED conspired to steal and did steal confidential proprietary information, including but not limited to trade secrets, from the Plaintiff.

16.    While employed with the Plaintiff and ostensibly on behalf of the Plaintiff, Defendant CAIAZZO traveled to New York to meet with Turner Construction, a large international construction services company based in New York City, New York, regarding potential sales opportunities for the Plaintiff. Without the knowledge or consent of the Plaintiff, Defendant MARTIN accompanied Defendant CAIAZZO in the meeting with Turner Construction.  During the meeting, representatives of Turner Construction advised Defendant CAIAZZO that Turner Construction was in need of an efficient, temporary LED lighting system that could be used in darkened spaces during the construction process.

17.    Upon returning to the Plaintiff's corporate offices, Defendant CAIAZZO sought design and development help from the Plaintiff so that a product could be developed by the Plaintiff for sale to Turner Construction and other potential customers with a similar need. As a result, the Plaintiff commenced work and developed an appropriate LED string-light project for Turner Construction.  At the suggestion of Defendant CAIAZZO, the Plaintiff determined that it would outsource the initial prototype to Defendant FAIRWAY for production. Defendant CAIAZZO was put in charge of monitoring the progress of the project with Defendant FAIRWAY.

18.    Instead of monitoring progress of the LED string-light project solely on behalf of and for the benefit of the Plaintiff, Defendant CAIAZZO unbeknown to Plaintiff also monitored the production of the prototype for Defendants MARTIN and FEDERALED.  After several

8

months of giving the Plaintiff positive reports on the project, Defendant CAIAZZO reversed course and represented to the Plaintiff that Defendant FAIRWAY no longer was pursuing production of the prototype and that Turner Construction had decided to look elsewhere for a solution to its lighting needs. In reality, Defendant CAIAZZO and Defendant MARTIN on behalf of Defendant FEDERALED and Defendants AYEN and SYEN on behalf of Defendant FAIRWAY continued to work together on the project, and Defendant FAIRWAY manufactured an LED string-light product similar to the design and purpose of the prototype that the Plaintiff had requested Defendant FAIRWAY to produce. Since that time, the LED string-like product produced with the help of Defendant FAIRWAY was advertised for sale on the website of Defendant FEDERALED, who based on information and belief sold the product to its customers.

<u>High Bay Product</u>

19.     During his employment with the Plaintiff and ostensibly to market better a third party's pre-manufactured LED lighting for high bay spaces that the Plaintiff distributed and sold, Defendant CAIAZZO obtained samples from the third-party vendor of the product. Defendant CAIAZZO then extensively questioned that owner of the Plaintiff who supervised the Plaintiff's design and development lab in what appeared to be an innocent effort to learn more about the product.

20.     Thereafter unbeknown to the Plaintiff, Defendant CAIAZZO sent a sample of the product to a potential customer of Defendant FEDERALED and began advertising the product on Defendant FEDERALED's website for the benefit of Defendant FEDERALED. Based on information and belief, Defendant CAIAZZO obtained samples of the high bay LED product and several other products from the third-party vendor under the guise of acting on behalf of the

Plaintiff and sent those samples to other prospective customers of Defendant FEDERALED in an effort to market the product for the benefit of Defendant FEDERALED.

## Plaintiff's Grow Light Kit

21.    While Defendant CAIAZZO was employed with the Plaintiff and thereafter, Defendants CAIAZZO on behalf of Defendant ELC, Defendants AYEN and SWEN on behalf of Defendant FAIRWAY and Defendant BOLAN on behalf of AVNET conspired to steal and did steal business opportunities from the Plaintiff. To accomplish their scheme of stealing business opportunities from the Plaintiff, these Defendants acting on behalf of themselves and the respective Defendant entities referenced above in this numbered paragraph conspired to steal and did steal confidential proprietary information, including but not limited to trade secrets, from the Plaintiff.

22.    Plaintiff's strategic business plan included working with a large distributor of commercial lighting products to sell LED equipment and kits consisting of multiple components. Ostensibly in furtherance of that part of Plaintiff's strategic business plan, Defendant CAIAZZO at the end of 2016, recommended that the Plaintiff work with AVNET and Defendant BOLAN, who at that time was employed with AVNET, to use AVNET as a large distributor. As a result, Defendant traveled to AVNET's corporate headquarters in Phoenix, Arizona, to meet with Defendant BOLAN to discuss distribution of the Plaintiff's Grow Light Kit which to that point that had been a commercially successful product for the Plaintiff.

23.    Unbeknown to the Plaintiff, Defendants CAIAZZO, AYEN and SYEN had communicated days before the meeting and had discussed the prospect of Defendant FAIRWAY manufacturing electronic lighting assemblies that AVNET then would distribute for

itself, including but not limited to a similar electronic assembly to that used by the Plaintiff in its Grow Light Kits. Also unbeknown to the Plaintiff, Defendant CAIAZZO, through his then dissolved limited liability company Defendant ELC, intended to charge a commission for the transactions between Defendants FAIRWAY and AVNET. As a result and again unbeknown to the Plaintiff, Defendant CAIAZZO invited AYEN to attend the meeting on behalf of Defendant FAIRWAY to discuss the new business arrangement Defendant CAIAZZO was trying to put together between Defendants FAIRWAY and AVNET. Defendants CAIAZZO, AYEN and BOLAN along with one or more high-level employees of AVNET met as planned.

24.    When Defendant CAIAZZO traveled to the meeting in Phoenix, he brought with him the circuit board for the Plaintiff's Grow Light Kit, and without the knowledge or consent of the Plaintiff. Defendant CAIAZZO gave the circuit board to Defendant AYEN to take back to Taiwan and analyze. With the knowledge of Defendants CAIAZZO, BOLAN and SYEN, Defendant AYEN x-rayed the circuit board for the purpose of viewing in a non-destructive way the circuit tracings within the board. Defendant CAIAZZO also provided Defendant BOLAN additional information about the inner workings of the plaintiff's Grow Light Kit. Based on information and belief, Defendants CAIAZZO, Bolan AYEN and SYEN have attempted, and continue to attempt to reengineer and develop a similar grow light kit to the Plaintiff's kit for Defendant FAIRWAY to manufacture and AVNET to distribute for itself.

## Other Actionable Conduct

25.    During Defendant CAIAZZO's employment with the Plaintiff and unbeknown to the Plaintiff:

11

a)      Defendant CAIAZZO obtained Vantage Lighting, Lightolear, Dominican College and SESCO Lighting, among others, as customers but marketed and sold to these customers through Defendant FEDERALED light fixtures that Plaintiff had available for sale or otherwise had the means to sell;

b)      Defendant CAIAZZO referred one of the Plaintiff's largest customers, Illumacorp Lighting, Inc. to Defendant Fairway and recommended that this customer work directly with Fairway instead of the Plaintiff. Based on information and belief, Defendant CAIAZZO and/or ELC was paid a commission by Fairway for this referral.

c)      Defendant CAIAZZO obtained Covenant Church as a customer but then marketed and sold high bay LED products to this customer through Defendant FEDERALED;

d)      Instead of working to develop a business relationship with Tivoli, LLC, a California-based commercial lighting supplier that specialized in bi-directional lighting in auditoriums, amphitheaters and other large gathering places, Defendant CAIAZZO while an employee of Plaintiff established a business relationship between Tivoli to act as a supplier for Defendant FEDERALED;

e)      Instead of working to develop a customer relationship with BAS and its subsidiary Big Ass Fans, a seller of industrial fans who included LED lights on some of its fans, Defendant CAIAZZO while an employee of Plaintiff referred this potential customer to Defendant FAIRWAY;

26.    As a direct and proximate result of the conduct of each and every Defendant as alleged in these General Allegations, the Plaintiff has suffered damages, including but not limited to a loss of customers, proprietary information, trade secrets, strategic business plans and

Relationships with vendors and distributors, all resulting in lost revenue, lost profit, the cost of travel and entertainment paid on behalf of or reimbursed to Defendant CAIAZZO and the cost of Defendant CAIAZZO's salary to the extent that he spent time during his employment on behalf of Defendants Federal and ELC.

27.     All conditions preceding to this action, if any, have been performed by the Plaintiff or have been waived by the Defendants.

28.     Plaintiff has retained its undersigned attorney to represent it in this action and has agreed to pay its undersigned attorney a reasonable fee and reimburse costs incurred in the prosecution of this action.

## Count I- Action under Defendant Trade Secrets Act

29.     Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs No. 1 through 28.  This is an action for damages and injunctive relief pursuant to 18 U.S.C.A. §1836(b).

30.     All Defendants misappropriated the Plaintiff's trade secrets as defined in 18 §§ USCA 1839(3) – (5). Specifically, the Defendant CAIAZZO acquired trade secrets owned by the Plaintiff under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secrets.  All other Defendants acquired the Plaintiff's trade secrets from Defendant CAIAZZO and made use of the trade secrets for economic advantage when such Defendants knew or had reason to know Defendant CAIAZZO was a person who owed a duty to the Plaintiff to maintain the secrecy of the trade secret or limit the use of the trade secret.

31.     As damages, the Plaintiff is entitled to the actual loss caused by the misappropriation of the trade secrets and  damages for any unjust enrichment caused by the

13

misappropriation of the trade secrets that is not addressed in computing damages for actual loss. Alternatively, the Plaintiff is entitled to a reasonable royalty for the unauthorized disclosure or use of the trade secrets. Plaintiff also is entitled to punitive damages because the trade secrets were maliciously and willfully misappropriated.

32.    The Plaintiff also is entitled to the Court's entry of an injunction restraining and preventing any further misappropriation or use of Plaintiff's trade secrets by any Defendant on such terms as the court deems reasonable and requiring appropriate affirmative actions to be taken by each Defendant to protect the trade secrets. In the event the Court deems that an injunction would be inequitable, the Court should enter an Order conditioning the future use of the Plaintiff's trade secrets by any Defendant on payment of a reasonable royalty by such Defendant.

WHEREFORE Plaintiff demands judgment against all Defendants for compensatory and punitive damages, injunctive relief, attorney's fees and such other relief as the Court deems just.

## Count II- State Law Action for Misappropriation of Trade Secrets

33.    Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs No. 1 through 28. This is an action for damages and injunctive relief pursuant to Florida Statutes §§ 688.001 et seq., commonly known as the Florida Uniform Trade Secrets Act.

34.    All Defendants misappropriated the Plaintiff's trade secrets as defined in Sections 688.002(1), (2) and (4). Specifically, the Defendant CAIAZZO acquired trade secrets owned by the Plaintiff under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secrets. All other Defendants acquired the Plaintiff's trade secrets from Defendant CAIAZZO and made use of the trade secrets for economic advantage when such

14

Defendants knew or had reason to know Defendant CAIAZZO was a person who owed a duty to the Plaintiff to maintain the secrecy of the trade secret or limit the use of the trade secret.

35.    In addition to any other damages proximately caused by the misappropriation of the Plaintiff's trade secrets, the Plaintiff is entitled to the actual loss caused by the misappropriation of the trade secrets and damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss. Alternatively, in lieu of damages for actual loss or unjust enrichment, the Plaintiff is entitled to a reasonable royalty for the unauthorized disclosure or use of the trade secrets. Plaintiff also is entitled to punitive damages because the trade secrets were maliciously and willfully misappropriated.

36.    The Plaintiff also is entitled to the Court's entry of an injunction restraining and preventing any further misappropriation or use of Plaintiff's trade secrets by any Defendant on such terms as the court deems reasonable and requiring appropriate affirmative actions to be taken by each Defendant to protect the trade secrets. In the event the Court deems that an injunction would be inequitable, the Court should enter an Order conditioning the future use of the Plaintiff's trade secrets by any Defendant on payment of a reasonable royalty by such Defendant.

WHEREFORE Plaintiff demands judgment against all Defendants for compensatory and punitive damages, injunctive relief, attorney's fees and such other relief as the Court deems just.

<u>Remainder of page intentionally left blank</u>

15

### Count III- State Law Action for Breach of Employment Agreement

37.      Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs No. 1 through 28. This is an action for damages against Defendant CAIAZZO for breach of the Employment Agreement.

38.      Defendant CAIAZZO breached the Employment Agreement by:

a)      appropriating, exploiting or otherwise using for his own benefit or the benefit of any other, business opportunities of the Plaintiff during the Defendant's employment with the Plaintiff;

b)      communicating both during and after the Defendant's employment with the Plaintiff confidential and proprietary information, including but not limited to trade secrets, to customers, competitors, suppliers or other third parties, that harmed the Plaintiff and/or was to the Plaintiff's disadvantage;

c)      communicating both during and after the Defendant's employment with the Plaintiff confidential and proprietary information, including but not limited to trade secrets that provided an advantage to the Plaintiff's competitors;

d)      directly or indirectly competing with the Plaintiff during the Defendant's employment with the Plaintiff and owning, managing, operating, joining in, controlling and participating in the ownership, management, operation or control of, or be connected with in any manner, with any entity engaged in business similar to that of the Plaintiff.

WHEREFORE Plaintiff demands judgment against Defendant CAIAZZO for compensatory and punitive damages, injunctive relief, attorney's fees and such other relief as the Court deems just.

16

## Count IV- State Law Action for Breach of Operating Agreement

39.     Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs No. 1 through 28. This is an action for damages against Defendants CAIAZZO and ELC for breach of the Operating Agreement.

40.     Defendants CAIAZZO and ELC breached the Employment Agreement by:

a)  appropriating, exploiting or otherwise using for his own benefit or the benefit of any other, business opportunities of the Plaintiff during the Defendant's employment with the Plaintiff;

b)     communicating both during and after the Defendant's employment with the Plaintiff confidential and proprietary information, including but not limited to trade secrets, to customers, competitors, suppliers or other third parties, that harmed the Plaintiff and/or was to the Plaintiff's disadvantage;

c)     communicating both during and after the Defendant's employment with the Plaintiff confidential and proprietary information, including but not limited to trade secrets that provided an advantage to the Plaintiff's competitors;

d)     directly or indirectly competing with the Plaintiff during the Defendant's employment with the Plaintiff and owning, managing, operating, joining in, controlling and participating in the ownership, management, operation or control of, or be connected with in any manner, with any entity engaged in business similar to that of the Plaintiff.

WHEREFORE Plaintiff demands judgment against Defendants CAIAZZO and ELC for compensatory and punitive damages, injunctive relief, attorney's fees and such other relief as the Court deems just.

17

## Demand for Jury Trial

Plaintiff hereby demands trial by jury on all issues so triable.

JAMES A. SCOTT, JR.
FLA BAR NO.: 0279072
Bogin, Munns & Munns, P.A.
Gateway Center
1000 Legion Place, Suite 1000
Orlando, FL 32801
Phone: 407-578-1334
Fax: 407-578-2181
jscott@boginmunns.com
Attorney and Trial Counsel for Plaintiff